ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JULIO RIVERA APONTE<br><br>Apelante<br><br>v.<br><br><br>MANUEL ÁNGEL FIGUEROA RIVERA Y OTROS<br><br>Apelado | KLAN202500495 | Apelación procedente del Tribunal de Primera Instancia Sala Superior de Ponce<br><br>Caso Núm.:<br>J AC2010-0613<br><br>Sobre: Nulidad de Asunto Registral |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Rivera Torres y la Juez Lotti Rodríguez[1].

Lotti Rodríguez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico a 15 de octubre de 2025.

El señor Julio Rivera Aponte (apelante o señor Rivera Aponte) mediante un recurso de *Apelación* presentado el 30 de mayo de 2025 nos solicita que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Ponce (TPI o foro primario), el 19 de marzo de 2025, notificada el 20 de marzo de 2025. Mediante el referido dictamen, el foro primario desestimó la demanda del epígrafe por entender que carecía de jurisdicción por falta de parte indispensable.

Trascurrido el término para presentar el recurso en oposición a la *Apelación,* el Sr. Manuel Ángel Figueroa Rivera y la Sra. Sonia Esther Torres Vargas (los apelados) no comparecieron.

Por los fundamentos que proceden a continuación, modificamos la *Sentencia* apelada y, así modificada, confirmamos.

---

[1] Conforme a la OATA2025-114, mediante la cual se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución de la Hon. Gloria L. Lebrón Nieves.

**I.**

El 15 de noviembre de 2010, el apelante presentó la *Demanda* que originó el pleito de autos.[2] En síntesis, alegó que los apelados realizaron obras en parte de la finca 39,070, que pertenece a este. A su vez, el apelante aduce que los apelados solicitaron un expediente de dominio sobre terrenos que no le pertenecían, ya que sustentaron su título en la Escritura #4 y no en la Escritura #7.  Siendo ello así, este solicitó al foro primario que declarara nulo el dominio concedido a los apelados mediante la *Resolución* emitida en el año 2008 (JJV2008-0099) y, por lo tanto, que ordenara la eliminación de dicho asiento en el Registro de la Propiedad. A su vez, insistió en que se ordenara a los apelados abstenerse de interferir con el uso y disfrute de su propiedad, más costas, gastos y honorarios de abogado.

Por su parte, el 13 de junio de 2011, los apelados presentaron su *Contestación a la Demanda y Reconvención.*  Manifestaron que el señor Rivera Aponte actuó de forma fraudulenta al solicitar un expediente de dominio sobre una franja de terreno que no le pertenecía y que el supuesto exceso de cabida fue un subterfugio para lograr la inscripción de esta.

El 10 de agosto de 2015, las partes presentaron el *Informe de Conferencia Preliminar.* Allí, los apelados solicitaron enmendar sus alegaciones a los efectos de impugnar la validez de la Escritura #69. Adujeron que la Escritura #69 era nula, ya que el señor Rivera Aponte, quien compareció a la misma como parte compradora, no sabe leer ni escribir.  A tales efectos, señalaron que, según dispone la Ley Notarial de Puerto Rico, se requería la comparecencia de un testigo instrumental.

Culminados varios trámites procesales, el juicio en su fondo comenzó el 11 de abril de 2016.  Así pues, el 12 de octubre de 2016, el TPI emitió *Sentencia* en la que desestimó la *Demanda* al concluir que la escritura de compraventa otorgada por los apelados era nula, toda vez que no cumplía con

---

[2] Apéndice VIII del *Recurso de Apelación,* págs. 70-72.

ciertos requisitos de la Ley Notarial de Puerto Rico. A tales efectos, el foro primario expresó que el apelante no poseía un título válido para realizar actos de dominio sobre la franja de terreno en controversia.

Inconforme, el apelante acudió al Tribunal de Apelaciones mediante recurso de *Apelación.* Allí, un panel hermano declaró nula la Escritura #69, conformó la Sentencia en cuanto a la nulidad de la Escritura 69. No obstante, modificó el dictamen del TPI para aclarar que el negocio jurídico que recogió dicha escritura era válido.[3] Conforme a ello, devolvió el caso al TPI para que determinara a quién pertenecía la franja de terreno en controversia y, una vez quedase establecida su titularidad, se procediera a anotarla correctamente en el Registro de la Propiedad.

En cumplimiento con el mandato, el TPI celebró la vista evidenciaria el 10 y 17 de septiembre de 2024. Luego de examinar y evaluar la prueba documental y testifical presentada, el TPI emitió una *Sentencia* en la que resolvió desestimar el pleito por falta de parte indispensable.[4] Esto, ya que del Informe del Comisionado Especial acogido por el foro primario se desprende que el titular de la franja de terreno aquí en disputa es don Carlos Roberto Oquendo Martínez, quien no es parte en este pleito. Igualmente, ordenó al Registrador de la Propiedad la cancelación del asiento correspondiente de la finca 39,070 por la escritura de compraventa ser nula. Además, ordenó a otorgar la escritura entre el apelante y los apelados, ya que el negocio jurídico fue válido.

Finalmente, el TPI formuló las siguientes **determinaciones de hechos:**

1. El demandante Julio Rivera Aponte no sabe leer ni escribir, aunque puede firmar su nombre. El Sr. Rivera Aponte, quien contaba con una edad de 81 años a la fecha del juicio, estudió hasta el segundo grado de escuela elemental.

2. El 31 de octubre de 2003 se otorgó ante el Notario Jorge Martínez la escritura número 69, sobre compraventa.

---

[3] Véase, KLAN201601675 (8 de mayo de 2018).
[4] Apéndice I del *Recurso de Apelación,* págs. 1-30.

3. A la escritura pública antes referida comparecieron los esposos Manuel A. Figueroa Rivera y Sonia E. Torres Vargas -aquí demandados- en calidad de vendedores. De la otra parte, en calidad de comprador, compareció el demandante Julio Rivera Aponte.

4. En la escritura 69 del 31 de octubre de 2003 el notario hizo constar que los otorgantes le aseguraron tener y a su juicio tenían, la capacidad legal necesaria para el otorgamiento. A dicha escritura no compareció testigo de clase alguna.

5. El objeto de la escritura 69 de 31 de octubre de 2003 fue la compraventa, por parte del demandante Julio Rivera Aponte del siguiente inmueble:

> ---RUSTICA:--- Predio de terreno radicado en el Barrio Coto Laurel del término municipal de Ponce, Puerto Rico, sitio conocido como 'Seboruco, cuya cabida actual luego de las segregaciones que se le han hecho es de TRES CUERDAS CON CUATROCIENTOS TREINTA PUNTO CINCUENTA Y NUEVE DE OTRA, equivalentes a una hectárea, veintidós áreas, veintiuna centiáreas, y sesenta y seis miliáreas, cuyas colindancias son: por el NORTE, con Don Antonio Ruiz; por el SUR, con camino vecinal, por el ESTE, con la Sucesión Serrallés; y por el OESTE, con Doña Maria de Jesús Fernández. Contiene una casa de madera y zinc que consta de sala, comedor, cocina, dos (2) cuartos dormitorios y balcón.-------------------------------------------
> Inscrita al Folio Número Treinta y Seis (36) del Tomo Mil Trescientos Sesenta y Dos (1362) de Ponce l, Finca Número Treinta y Nueve Mil Setenta (39,070).

6. El precio pactado en la escritura fue de $100,000.00, de los que se hizo constar por los vendedores (demandados) que el comprador (demandante) les hizo entrega al momento del otorgamiento de la cantidad de $60,000.00, quedando un balance de $40,000.00 pagadero a plazos.

7. Al pie de la escritura el notario hizo constar que le había dado lectura en voz alta. Dejó consignado, además, que fue "leída personalmente por los comparecientes".

8. Siendo un hecho probado que el demandante Julio Rivera Aponte no sabe leer, tenemos que concluir que no es correcta la afirmación del Notario Jorge Martínez Martínez de que todos los otorgantes la leyeron personalmente. La prueba desfilada no nos permite hacer una determinación en cuanto a si el notario desconocía o no que el comprador no podía leer. Irrespectivamente de esto, quedó establecido que a pesar de que uno de los otorgantes (el demandante de la escritura 69 de 31 de octubre de 2003, autorizada por el Notario Público Jorge Martínez Martínez, no sabía leer ni escribir, a la misma no compareció ningún testigo instrumental.

9. La escritura en cuestión constituye el único título en el que el demandante Julio Rivera Aponte se ha basado, en este pleito, para sostener su derecho dominical sobre el inmueble descrito en la determinación de hecho número 5 de esta sentencia. De igual forma, ha sido en función de dicho título que el demandante ha sostenido su derecho a promover diversas operaciones relacionadas con el inmueble, como lo han sido una escritura de agrupación y un caso ex parte de expediente de dominio. Estas situaciones han ido dirigidas a intentar lograr que se le reconozca al demandante un derecho dominical sobre una franja de terreno localizada entre el margen norte de la carretera PR 52 (autopista Luis A. Ferré), y la colindancia sur de la finca descrita en la escritura 69 de 31 de octubre de 2003.

10. Según habremos de fundamentar en las conclusiones de derecho que prosiguen, la escritura 69, de 31 de octubre de 2003 autorizada por el Notario Jorge Martínez Martínez, a la que comparecieron los aquí demandados como vendedores de la finca 39,070, inscrita al Folio 36 del Tomo 1362 de Ponce l, y el aquí demandante en calidad de comprador es nula.

11. La codemandante Joan Aponte Diaz es hija del Sr. Julio Rivera Aponte. En el juicio declaró sobre los sufrimientos que alegadamente le ha ocasionado la controversia por el terreno con los demandados. Declaró que iba a construir una casa en el terreno que compró su padre, más no se ha atrevido a hacerlo por la controversia con los demandados. El tribunal concluye que la codemandante Joan Aponte Diaz parte de la suposición de que su padre posee un título válido que le permitiría realizar negocios jurídicos con el terreno. Sin embargo, como indicamos anteriormente, en virtud de esta sentencia se está decretando la nulidad del título (escritura en la que el codemandante Julio Rivera Aponte ha descansado al momento de ejercer actos de dominio sobre el inmueble en cuestión.

12. La conducta procesal de los demandantes denota una actitud de temeridad, al insistir en su reclamo no obstante el hecho de haber sido advertidos que su título era, como cuestión de derecho, nulo.

13. El 24 de marzo de 1987 los demandados adquieren de Don Ángel Rivera Maldonado y Doña Consuelo Ayala Miranda mediante la Escritura número 4 las propiedades que se encuentran localizadas en el Barrio Coto Laurel, sitio Seboruco de Ponce, que se detallan a continuación: (1) Predio A con una cabida de 1.0 cuerda; (2) Predio B con cabida de

1.0 cuerda; (3) Predio C con cabida de 1.0 cuerda; (4) Predio D con cabida de 0.50 cuerda y (5) Predio E con cabida de 4.0 cuerdas.

14.    Los cinco (5) predios detallados en inciso anterior totalizan 7.50 cuerdas y según la escritura número 4 no se encuentran inscritos en el Registro de la Propiedad.

15.    El 25 de abril de 1989 los demandados, Don Ángel Rivera Maldonado y Doña Consuelo Ayala Miranda mediante Escritura número 7 sobre Acta Aclaratoria aclaran lo siguiente:

(a) que los demandados en el presente caso solo adquirieron la finca que se describe en el predio E de la Escritura número 4 cuya cabida y descripción es la que se detalla a continuación:

---RUSTICA: Predio de terreno radicado en el Barrio Coto Laurel del término municipal de Ponce, Puerto Rico sitio conocido como Seboruco; cuya cabida actual luego de las segregaciones que se han hecho, es de tres cuerdas con cuatrocientos treinta punto cincuenta y nueve de otra (3.430,59) equivalentes a un hectárea, veintidós áreas, veintiún centiáreas y setenta y seis miliáreas; y cuyas colindancias son: por el norte con Antonio Ruiz, por el Sur con camino vecinal, por el Oeste, con Doña María de Jesús Fernández y por el Este con la Sucesión Serralles.----------------

(b) aclaran los otorgantes que la finca que se describe con la letra (a) consta inscrita al Folio 38, del Tomo 1362 del Registro de la Propiedad, Sección 1 de Ponce, Puerto Rico, Finca 39070.

(c) Disponen que en la escritura número 4 los comparecientes de la SEGUNDA PARTE (aquí demandados) adquirieron la finca que aquí se describe. por la cantidad de treinta mil dólares ($30,000.00).

16.    La cabida de la finca número 39,070 para efectos del Registro de la Propiedad es de 3.43059 cuerdas. No obstante, la cabida antes señalada contiene una parcela de 0.3280 cuerdas que fuera segregada en el caso número 2-71-457LS.

17.    La parcela de 0.3280 cuerdas a la que se hace referencia en el inciso anterior fue vendida con la condición de agruparse a los terrenos colindantes.

18.    Las colindancias actualizadas de la finca 39,070 que se detallan en el inciso 15 (a), según el plano de mensura certificado por el Ingeniero Angleró son las siguientes: (a) por el Norte con terrenos de Antonio Ruiz, (b) por el Sur con un camino, (c) por el Este con más terrenos de Antonio Ruiz y de

la Sucesión Serrallés y (d) por el Oeste con Solar "A" segregado de la finca principal.

19. El 2 de septiembre de 1971 Don Ángel Rivera Maldonado y Doña Consuelo Ayala Miranda venden a Don Nemesio Rodríguez mediante Escritura número 109 sobre Segregación, Compraventa y Agrupación las propiedades localizadas en el Barrio Coto Laurel, sitio Seboruco de Ponce, que se detallan a continuación:

(a) Predio A con cabida de 1,927.97 metros cuadrados que constituye el remanente de una finca de 1.0 cuerda luego de expropiado un predio para la PR-52;
(b) Predio B con cabida de 2,051.65 metros cuadrados que constituye el remanente de una finca de 1.0 cuerda luego de expropiado un predio para la PR-52;
(c) Predio C con cabida de 2,161.46 metros cuadrados que constituye el remanente de una finca de 1.0 cuerda luego de expropiado un predio para la PR-52;
(d) Predio D con una cabida de 1,127.73 metros cuadrados que constituye el remanente de una finca de 0.50 cuerda que constituye el remanente de una finca de 0.50 cuerda; y
(e) Franja de terreno de forma triangular segregada mediante el Caso Número 2-71-457LS con cabida de 0.3280 cuerdas que procede de una finca original de 4.00 quedando un remanente de 3.6720 cuerdas.

20. Mediante la Escritura 109 de 20 de septiembre de 1971 Don Nemesio Rodríguez y Doña Cándida Morera Caratini adquieren los cuatro predios (remanentes) que se describen en el inciso anterior, así como la parcela triangular segregada con una cabida de 0.3280 cuerdas, y hace constar que por colindar entre sí los procede a agrupar formando una finca con una cabida de 2.10 cuerdas, con las siguientes colindancias: (1) Por el Norte con terrenos de Antonio Ruiz; (2) por el Sur con la PR-52; (3) por el Este con más terrenos de Antonio Ruiz y (4) por el Oeste con terrenos de la Sucesión de Martín Fernández García.

21. Los cuatro predios identificados como A, B, C y D fueron expropiados parcialmente para la PR-52 y sus remanentes vendidos al Sr. Nemesio Rodríguez en 1971. Estos son los mismos predios que se mencionan en la Escritura 4 y que luego mediante la Escritura 7 de Acta Aclaratoria se aclara que no fueron vendidos a los demandados en el presente caso.

22. El 20 de octubre de 1979 Don Nemesio Rodríguez y Doña Cándida Morera Caratini venden a **Don Carlos Roberto Oquendo Martínez**, mediante Escritura 154 sobre Compraventa e Hipoteca la finca agrupada con una cabida de 2.10 cuerdas que incluye los cuatros predios antes identificados y la franja de forma triangular.

23. El demandado presentó Petición de Expediente de Dominio en el caso 3J3V2008-0099 el 5 de febrero de 2008.

24. El Comisionado Especial expuso que el demandado en su Petición indicó ser propietario de dos predios de terreno con cabidas de 1.0 y 0.50 cuerda respectivamente; los cuales contienen en su descripción terrenos que forman parte de la servidumbre adquirida para la construcción de la PR-52, cuyos remanentes fueron vendidos a Nemesio Rodríguez y actualmente pertenecen al Ingeniero Carlos Roberto Oquendo Martínez. Dispuso además que los predios de 1.0 y 0.50 cuerda no son colindantes, por lo que no se podían agrupar y que eso fue lo que realizó el demandado.

25. En el caso JJV2008-0099 los demandados Manuel Figueroa Rivera y Sonia Esther Torres Vargas, bajo juramento, le representaron al Tribunal ser los dueños de los predios de 1.0 y 0.50 cuerda respectivamente que fueran adquiridos mediante escritura 4 sobre Compraventa con conocimiento de que la información provista era falsa y obviando el contenido del Acta Aclaratoria suscrita por los demandados.

26. La Escritura número 85 sobre Agrupación otorgada por los demandados el 25 de septiembre de 2006. ante el notario Luis R. Rivera Mendoza (el mismo abogado que realizó el trámite sobre Expediente de Dominio en el caso JIV2008-0099) agrupó dos predios que no sólo no le pertenecen a los demandados Manuel Figueroa Rivera y Sonia Esther Torres Vargas, sino que los predios de 1.0 y 0.50 cuerda no colindan entre sí.

27. El Comisionado Especial destacó en su informe que según el plano de segregación de solares con fecha de 4 de noviembre de 1971, certificado por el Ingeniero Alfonso Angleró González, con licencia 3595, que se formaron dos (2) predios rotulados A y B con cabidas respectivas de 0.2844 y 0.2850 cuerdas procedentes de la finca con cabida de 3.6720 cuerdas que fueran propiedad de Don Ángel Rivera Maldonado y que fueran vendidas a Ramón Sanabria Berríos y Alfonso Angleró González. Aclaró el Comisionado Especial que si a la finca de 3.6720 cuerdas le restamos la suma de los predios de 0.2844 y 0.2850 (0.5694 en total) el resultado es de 3.1026 cuerdas luego de segregados los dos predios.

28. El Comisionado Especial destacó que en los datos del Plano de Adquisición de Terrenos titulado "Right of Way Plan" preparado por funcionarios de la Autoridad de Carreteras con fecha de 11 de noviembre de 1968 se establecen los límites de

las colindancias y la ubicación de las áreas expropiadas para la Carretera PR-52 que formaban parte de los predios que colindan al Oeste de la finca 39070 y para los cuales se ilustra que colindan al Sur con un camino en tierra (dirt road). Se detalla que en el plano de adquisición le terrenos el predio en controversia no fue identificado ni incluido en la expropiación.

29.    Las partes en el presente caso otorgaron la Escritura número 69 el día 31 de octubre de 2003 ante el Notario Jorge Martínez Martínez.

30.    Surge de la escritura número 69 que la parte demandada vendió a la parte demandante, un predio de terreno o finca con un área de tres cuerdas con cuatrocientas treinta cincuenta y nueve mil diez milésimas de otra (3.43059 cdas.).

31.    Mediante Sentencia dictada el 12 de octubre de 2016 se decretó la nulidad de la Escritura #69, otorgada el 31 de octubre de 2003 toda vez no se cumplieron con las formalidades de la Ley Notarial, en su artículo 34.

32.    El demandante, Julio Rivera Aponte, no sabe leer ni escribir.

33.    La parte demandada adquirió la finca 39,070 el 24 de marzo de 1987 en unión a 4 predios adicionales, mediante la Escritura $4 sobre Compraventa del Notario Ángel Luis Vega Hernández.

34.    La parte demandada otorgó la Escritura #7 sobre Acta Aclaratoria ante el Notario Ángel Luis Vega Hernández, haciendo constar que no adquirió cinco (5) predios sino solamente 1, identificado mediante la parcela "E".

35.    La parcela "E", constituye la finca número 39070, Sección Primera de Ponce, la que se inscribió en el registro de la propiedad mediante el Expediente de Dominio; Civil CS72-2331, Sala de Ponce, con Resolución de 2 de agosto de 1973.

36.    La descripción de la parcela B, que aparece en la escritura 4 de 1987 y que fue corregida en la escritura número 7 de 1989, acta aclaratoria y utilizada para el expediente de dominio del demandado, lee como sigue: "Predio de una cuerda, equivalente a treinta y nueve áreas, treinta centiáreas, que radica en le sitio Seboruco, Barrio Coto Laurel de Ponce, en colindancia por el NORTE, con Tomás Miranda por el Sur, la Sucesión Serrallés; por el ESTE con Bernardina Fernández antes, ahora María de Jesús Fernández; y por el OESTE, terreno de María de Jesús Fernández.

37. La descripción de la parcela D, es la siguiente: Predio de media cuerda equivalente a diez y nueve áreas, sesenta y cinco centiáreas, diez y ocho miliáreas, sesenta y cinco centiáreas, diez y ocho miliáreas, que radica en el sitio Seboruco, Barrio Coto Laurel de Ponce, en colindancia por el NORTE, Tomas Mirandal por el SUR, Sucesión Serrallés; por el ESTE, predio adjudicado a Maria de Jesús Fernández y por el OESTE, Martín Fernández.

38. La parte demandada solicitó la expedición de un Expediente de Dominio en el caso JJV2008-0099, obteniendo Resolución el 28 de octubre de 2008.

39. El demandante solicitó un Expediente de Dominio en el caso JJV2009-0673, obteniendo una Resolución el 21 de mayo de 2010.

40. El Expediente de Dominio del demandante fue tramitado utilizando la Escritura número 69 otorgada el 31 de octubre de 2003.

41. El 5 de febrero de 2008 los demandados Manuel Ángel Figueroa Rivera y Sonia Esther Torres Vargas presentaron solicitud sobre Expediente de Dominio bajo el número JJV2008-0099.

42. En la solicitud bajo el caso JJV2008-0099 los demandados indicaron ser dueños del predio que se describe a continuación:

RUSTICA: Porción de terreno localizado en el sitio Seboruco, Barrio Cotto Laurel del término municipal de Ponce, Puerto Rico, de una cabida superficial de-, UNA CUERDA Y CINCUENTA CENTIMOS DE OTRA (1.50 cds.). Colindante por el NORTE, con camino municipal que conduce hacia Palmarejo; por el SUR, con terrenos de la Autopsia Luis A. Ferré y canal de riego con servidumbre de paso a favor de la Sucesión J. Serrallés Iric.; por el ESTE, con terrenos de la Sucesión Serrallés Inc.; y por el OESTE, con terrenos del Ingeniero Carlos Oquendo. Que dicho predio de terreno fue mensurado por el- Agrimensor Xavier A. De Jesús López, licencia número, 9466; y el mismo resultó de una cabida de CINCO MIL CUATROCIENTOS CINCUENTA Y SEIS PUNTO CUATRO MIL SEISCIENTOS NOVENTA METROS CUADRADOS (5,456,4690 mf/c), equivalentes a UNO PUNTO TRES MIL OCHOCIENTOS OCHENTA Y TRES CUERDAS (1.3883 cds.).

43. Los demandados en el caso JJV2008-0099 manifestaron que la finca tal y como se encuentra descrita en el inciso anterior, se constituyó mediante la agrupación de dos predios de terreno que colindaban entre sí, y que describió en su solicitud como sigue:

a. RUSTICA: Predio de UNA CUERDA, equivalente a treinta y nueve áreas y treinta centiáreas, que radica en el sitio Seboruco, Baro Cotto Laurel de SENTENCIA JAG2010-0613Ponce, Puerto Rico. En colindancia por el NORTE, con terrenos de Tomás Miranda; por el SUR, con la Sucesión Serrallés; por el ESTE, con terrenos de Maria de Jesús Fernández; y por el OESTE, con terrenos de Maria De Jesús Fernández.

b. RUSTICA: Predio de MEDIA CUERDA equivalente a diecinueve áreas, sesenta y cinco centiáreas y dieciocho miliáreas, que radica en el sitio Seboruco, Barrio Cotto Laurel de Ponce, Puerto Rico. En colindancia por el NORTE, con terrenos de Tomás Miranda; por el SUR, con terrenos de la Sucesión Serrallés; por el ESTE, con terrenos de Maria De Jesús Fernández; y por el OESTE, con Martín Fernández.

44. Los demandados en el caso JJV2008-0099, en solicitud juramentada representaron al tribunal que los dos predios descritos para formar con ellos la finca objeto del Expediente de Dominio se constituyó mediante la Escritura número 85, sobre agrupación otorgada el 25 de septiembre del 2006 ante el Notario Licenciado Luis R. Rivera Mendoza.

45. En el caso JJV2008-0099 los demandados manifestaron que adquirieron los dos (2) predios de tercero mediante escritura número 4 sobre compraventa otorgada el 24 de marzo de 1987 ante el Notario Ángel Luis Vega Hernández.

46. El 25 de abril de 1989 los demandados suscribieron Acta Aclaratoria mediate Escritura número siete (7) en la que aclara que la parte demandada únicamente adquirió el predio que se describe a continuación:

RUSTICA: Predio de terreno radicado en el Barrio Cotto Laurel del término municipal de Ponce, Puerto Rico sitio conocido como Seboruco; cuya cabida actual luego de las segregaciones que se le han hecho, es de tres cuerdas con cuatrocientos treinta punto cincuenta y nueve de otra (3.430,59) equivalente a un hectáreas, veintidós áreas, veintiún centiáreas y setenta y seis miliáreas; y cuyas colindancias son: por el Norte con Antonio Ruiz, por el Sur Jesús Fernández y por el Este, con la Sucesión.----------------------
---Contiene una casa de madera y zinc que consta de sala, comedor, cocina, dos cuartos de dormitorios y balcón.---------

Se aclaró además que la finca antes descrita consta inscrita al Folio 38, del Tomo 1362 del Registro de la Propiedad, Sección 1 de Ponce, Puerto Rico, Finca 39070, inscripción primera.

47. Los demandados en el expediente de domino en el caso JJV2008-0099 obviaron mencionar la existencia de un acta aclaratoria mediante Escritura número 7 otorgada el 25 de abril de 1989.

48. Los predios de terreno que los demandados manifestaron al Tribunal haberse adquirido en el inciso tercero en el caso JJV2008-0099 no le pertenecen.

49. Los demandados indujeron a error al Tribunal en el caso JJV2008-0099.

50. Los demandantes no fueron notificados de la Solicitud de Expediente de Dominio en el caso JJV2008-0099.

51. El 28 de julio de 2009 la parte demandante presentó Petición sobre expediente de dominio haciendo referencia a un exceso de cabida bajo el número JJV2009-0673.

52. El demandante Julio Rivera Aponte es el dueño en pleno dominio de la siguiente propiedad:

RUSTICA: Predio de terreno radicado en el Barrio Coto Laurel del término Municipal de Ponce, Puerto Rico, sitio conocido como Seboruco, cuya cabida actual luego de las segregaciones que se le han hecho es de tres cuerdas con cuatrocientos treinta cincuenta y nueve diez mil milésimas de otra (3.430.59 cuerdas) equivalentes a una hectárea, veintidós áreas, veintiún centiáreas y setenta y seis miliáreas. En lindes por el Norte con don Antonio Ruiz, Sur con camio vecinal, por el Este con la sucesión Serrallés, Oeste con doña Maria de Jesús Fernández. Contiene una casa de madera y zinc que consta de sala, comedor, cocina dos cuartos dormitorios y balcón. Inscrita al folio 74, del tomo 2015, finca número: 39070, del Registro de la Propiedad de Ponce Sección primera, inscripción tercera.

53. Manifestó el demandante en el caso JJV2009-0673 que la propiedad fue adquirida mediante compraventa el 31 de octubre de 2003, a los demandados en el presente caso.

54. El demandante expuso al Tribunal en el caso JJV2009-0673 que decidió verificar la cabida de su propiedad, mediante la contratación de un ingeniero agrimensor licenciado, don Manuel Macario Ramos, licencia + 4700, y con la debida notificación a los vecinos colindantes, resultando la cabida de la finca con un exceso en más de veinte por ciento en cuanto a cabida, y con la siguiente descripción:

RUSTICA: Predio de terreno radicado en el Barrio Coto Laurel del término Municipal de Ponce, Puerto Rico, sitio conocido como Seboruco, cuya cabida actual luego de las segregaciones que se le han hecho es de cuatro punto

sesentiuno noventicinco cuerdas (4.6195 cdas) equivalentes a dieciocho mil ciento cincuenta y seis punto cincuentiuno treinticinco metros cuadrados (18,156.5135 mc), en lindes por el Norte con don Antonio Ruiz, por el Sur con canal de riego y Carretera PR cincuenta y dos (PR-52); por el ESTE,.con la sucesión Serrallés, y por el OESTE, con Doña Maria De Jesús Fernández. La atraviesa una carretera municipal de Este a Oeste cuyo ancho y largo están claramente delimitados.

55. El 11 de febrero de 2010, notificada el 17 de febrero de 2010, el Tribunal dictó Resolución en el caso JJV2009-0673 declarando justificado el dominio del exceso de cabida de la finca que se describirá a continuación, y ordenó su inscripción en el Registro de la Propiedad con nueva descripción después de mesurada.

RUSTICA: Predio de terreno radicado en el Barrio Coto Laurel del término Municipal de Ponce, Puerto Rico, sitio conocido como Seboruco, cuya cabida actual luego de las segregaciones que se le han hecho es de cuatro punto sesintiuno noventicinco cuerdas (4.9165 cuerdas) equivalentes a diez y ochomil ciento cincuenta y seis punto cincuentiuno treinticinco (17156.5135 mc) metros cuadrados, en lindes por el Norte con don Antonio Ruiz, por el Sur con canal de riego y Carretera PR Cincuenta y dos ([PR-52); por el ESTE, con la Sucesión Serrallés, y por el OESTE, con doña María De Jesús Fernández. La atraviesa una carretera municipal de Este a Oeste cuyo ancho y largo están claramente delimitados.

56. El 21 de mayo de 2010, notificada el 27 de mayo de 2010, se dictó Resolución Enmendada con el propósito de incluir el aumento en valor de la propiedad por el aumento en cabida.

57. Surge del expediente en el caso JJV2009-0673 que se hizo referencia al demandado en el presente caso y que se incluyó en el edicto notificando del proceso.

58. El Sr. Wilberto Laracuente Vargas es camionero independiente y labora por cuenta propia.

59. El Sr. Laracuente Vargas ocupa un predio (solar) hace dos (2) años por autorización del Sr. Manuel Figueroa Rivera.

60. El Sr. Manuel Figueroa se acercó al Sr. Laracuente Vargas y lo llevó al predio en controversia y el Sr. Laracuente entendió que el Sr. Figueroa era el dueño.

61. El Sr. Wilberto Laracuente paga por el uso del solar brindado el mantenimiento al mismo.

62.   El Sr. Julio Rivera Aponte manifestó que desde que fue a ver el terreno que adquirió del Sr. Manuel Figueroa, éste le manifestó que el cuchillo (haciendo referencia a una franja de terreno) no era de él.

63.   El demandante Julio Rivera Aponte realizó las gestiones necesarias para obtener la información y presentar el expediente de dominio bajo el número 44 V2009-0673.

64.   El demandante manifestó que quería construir en el terreno de abajo una casa y que el terreno de abajo fue objeto del expediente de dominio en el caso JJ V2009-0673.

65.   Del testimonio del demandante se desprende que siempre estuvo consciente de que era un terreno distinto y separado al que adquirió del DA en el presente caso.

66.   El demandante indicó que le colocaron un anuncio de se vende al terreno.

67.   En el solar objeto de controversia también iniciaron una excavación del ancho y 2 de alto para que el demandante no pudiera pasar al solar.

68.   Luego sembraron árboles en el solar objeto de controversia y el demandante los dejó.

69.   El demandante indicó en vista que solicitó el expediente de dominio en el caso JJV2009-0673 para agrupar el terreno que compró al demandado con el remanente. No obstante, de una evaluación del expediente en el caso JIV2009-0673 se desprende que lo que se solicita es un expediente de dominio por exceso de cabida.

70.   El demandante indicó que el terreno no inscrito es un remanente de la autopista que sobró al construir la carretera.

71.   El remanente de terreno o predio en controversia es colindante con la finca que el demandante compró al demandado.

72.   El demandante compró al demandado un predio de 3.5 cuerdas y pagó $100,000.

73.   El Sr. Manuel Figueroa Rivera al momento de realizar la transacción con el demandante le hizo entrega de un plano y le indicó que no tenía más terrenos allí.

74.   Según el demandante el Sr. Manuel Figueroa le informó que el terreno remanente era de los Serrallés,

75. El Sr. Julio Rivera Aponte indicó que los Serrallés le informaron que ellos no eran los dueños de ese remanente.

76. El Sr. Manuel Figueroa Rivera manifestó que le dijo al Sr. Julio Rivera Aponte que el cuchillo (remanente) era de él. No obstante, el demandado alegó que comenzó a pagar el CRIM sobre esa propiedad en el 2006.

77. El Sr. Manuel Figueroa Rivera indicó que en el 2010 fue al CRIM y allí le informaron que el terreno remanente ya no se encontraba a su nombre, sino del demandante.

78. El Sr. Manuel Figueroa Rivera indicó que colocó en el terreno una verja después del 2006 y mando a hacer una zanja, pero no recordó la fecha.

79. El Sr. Manuel Figueroa Rivera adquirió la finca que luego vendió al demandante en 1987.

80. En el 1989 se otorgó un Acta Aclaratoria relacionada con la transacción de 1987, pero no afectó la titularidad del Sr. Manuel Figueroa Rivera de Predio identificado con la letra

81. El demandante compró el predio identificado como Predio E al demandado el 31 de octubre de 2003.

82. Transcurrieron 19 años entre la fecha en que el demandado adquirió en 1987 la finca que luego vendió al demandante en el presente caso en 2003, y la fecha en que el demandado indicó que comenzó a pagar el CRIM del predio en controversia en el año 2006.

83. El demandado indicó que adquirió la propiedad en el 1987, que fue dueño 16 años y que el cuchillo (terreno en controversia) le pertenece.

84. Durante el periodo entre 1987 y 2003 que el dueño de la propiedad con el número de finca 39,070 era el Sr. Manuel Figueroa, y que según alegó el demandado le pertenece la franja de terreno en controversia, el demandado no realizó trámite alguno de expediente de dominio relacionado con la franja de terreno en, controversia.

85. El Sr. Manuel Figueroa realizó el trámite de Escritura de Agrupación un año después que fue notificado del trámite que realizaba el parte demandante relacionado con medir la finca objeto de controversia.

86.    El demandado indicó no recordar si las verjas que colocó en la finca fue antes o después del trámite de expediente de dominio.

87.    El demandado manifestó que la zanja la realizó después del expediente de dominio.

88.    El demandado recibió una carta de la Lcda. Villanueva con fecha de 30 de noviembre de 2005 en la que se le invitaba a participar de la mesura de un predio colindante en torno a un trámite que estaba realizando la parte demandante en el presente caso.

89.    El 6 de diciembre de 2905 el demandado acusó recibo de la carta a la que se hace referencia en el inciso anterior y requirió información relacionada sobre la hora en que se llevaría a cabo.

90.    En su testimonio el agrimensor Jorge Soto Colón indicó no recordar el nombre del demandante y que con la persona que él se comunicó fue con el Sr. Félix Martínez.

91.    El agrimensor Jorge Soto Colón indicé que visitó el predio en controversia en 2 ó 3 ocasiones, pero que el plano lo levantó y firmó el Ing. Macario Ramos.

92.    El agrimensor Soto Colón certificó que las veces que visitó el predio fue mucho antes del 6 de marzo de 2000.

93.    En el plano de 6 de marzo de 2006 los demandados no aparecen como colindantes.

94.    El Sr. Julio Rivera era cliente de la oficina que la Lcda. Villanueva compartía con el Lcdo. Rosario Félix para el 2005.

95.    Surge de Certificación de Propiedad Inmueble con fecha de 22 de agosto de 2023 que el demandante logró la inscripción de Resolución Enmendada en el caso JJV2009-0673 y que la finca número 39,070 que antes constaba inscrita con una cabida de 3.43059 cuerdas actualmente consta de 4.6195 cuerdas.

96.    En la finca antes relacionada también se encuentra como documento pendiente de despacho la Anotación de Demanda relacionada con el presente caso.

97.    Surge de Certificación Registral con fecha de 19 de octubre de 2010 que el trámite relacionado con el expediente de dominio que llevó a cabo el demandado Manuel Ángel Figueroa Rivera logró inscripción en el Registro de la

Propiedad bajo el número de finca 64,263, según inscripción primera de 22 de enero de 2009.

98. A1 Tribunal no le mereció credibilidad el testimonio del demandado Manuel Figueroa Rivera.

99. El Comisionado Especial Benigno Rodríguez presentó el Informe que le fuera encomendado el 31 de julio de 2014.

100. La Resolución en el caso JJV2008-0099 sobre el expediente de domino solicitado por el demandado Manuel Ángel Figueroa Rivera y su esposa Sonia Esther Torres Vargas se dictó el 28 de octubre de 2008, notificada el 30 de octubre de 2008.

101. La Resolución enmendada en el caso JJV2009-0673 sobre expediente de dominio (Exceso de cabida) solicitado por el demandante Julio Rivera Aponte se dictó el 21 de mayo de 2010, notificada el 27 de mayo de 2010.

102. Desde el 31 de julio de 2014 se puede imputar a las partes de conocimiento (por ser parte de las determinaciones que realiza el Comisionado Especial), sobre la alegada titularidad de Don Carlos Roberto Oquendo Martínez por el predio en controversia.

En desacuerdo, ambas partes presentaron sus escritos de *Reconsideración,* los cuales no fueron acogidos por el foro primario.[5]

Inconforme, con el proceder del TPI, el 30 de mayo de 2025, el apelante acudió ante este Tribunal mediante recurso de *Apelación* y señala los siguientes errores:

**PRIMER ERROR:** Cometió grave de error de derecho el Tribunal decretarse sin jurisdicción por falta de parte indispensable, la cual se determinó surgía del Informe del Comisionado Especial, la cual no formó parte de la Vista Evidenciaria

**SEGUNDO ERROR:** Cometió grave de error de derecho el Tribunal al incumplir con el mandato del Tribunal de Apelaciones, no determinando la titularidad de la franja de terreno

**TERCER ERROR:** Cometió grave de error de derecho el Tribunal al mantener la doble inmatriculación del predio en controversia, a pesar de determinar que el demandado había inducido a error al Tribunal al presentar información incompleta para obtener el expediente de dominio del caso JJV20008-0099.

Mediante *Resolución* emitida el 16 de julio de 2025, se concedió a los apelados hasta el 28 de agosto de 2025, para presentar su oposición a la

---

[5] Apéndice IV y V del *Recurso de Apelación,* págs. 35-44.

*Apelación.* Trascurrido el término para presentar la oposición, los apelados no comparecieron.

## II.

### A. Deferencia judicial

Es doctrina reiterada que los jueces de instancia gozan de amplia discreción y flexibilidad en el manejo cotidiano y la tramitación de los asuntos que se ventilan ante sus salas. *BPPR v. SLG Gómez-López*, 213 DPR 314, 333-334 (2023); *In re Collazo I,* 159 DPR 141, 150 (2003); *Vives Vázquez v. ELA*, 142 DPR 117, 141 (1996). La deferencia a su criterio responde al principio de que los tribunales apelativos no deben sustituir ni dirigir la conducción del trámite ordinario de los casos que corresponden al foro primario. *BPPR v. SLG Gómez-López, supra,* pág. 334 (citando a *Mejías Montalvo v. Carrasquillo Martínez,* 185 DPR 288, 306-307 (2012)). Como es sabido, el TPI es el que mejor conoce las particularidades del caso y quien está en mejor posición para adoptar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final. Íd.

En consecuencia, la norma general dispone que los foros apelativos no intervendrán en la discreción de los foros primarios, salvo que los dictámenes emitidos resulten arbitrarios o exista un claro abuso de discreción. *BPPR v. SLG Gómez-López, supra,* pág. 334; *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 273 (2021). El uso adecuado de esa discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *BPPR v. SLG Gómez-López, supra,* pág. 335; *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013); *Rivera Durán v. Banco Popular,* 152 DPR 140, 155 (2000).

De modo que, la deferencia cede cuando se acredita que el tribunal incurrió en un abuso de discreción, actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. SLG Gómez-*

*López, supra,* págs. 334-335. Por lo tanto, si en la solicitud ante nuestra consideración no concurren tales criterios y la actuación del foro primario cuenta con un fundamento razonable y no afecta derechos sustanciales de las partes, debe prevalecer el criterio del juez del foro primario. *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

Igualmente, es norma conocida que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, los tribunales apelativos no deben intervenir para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el foro primario. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V*; Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024 (2024); *Ortíz Ortíz v. Medtronic,* 209 DPR 759, 778 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Incurre en pasión, prejuicio o parcialidad el juez "que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". *Ortíz Ortíz v. Medtronic, supra,* pág. 779 (citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013)). En cuanto al error manifiesto, este ocurre cuando el foro revisor está convencido de que se cometió un error "porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Méndez v. Morales*, 142 DPR 26, 36 (1996).

Ahora bien, la llamada deferencia judicial está predicada en que los jueces del TPI "están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Peña Rivera v. Pacheco Caraballo, supra,* pág. 1025 (citando a *Ortíz Ortíz v. Medtronic, supra,* pág. 779). Así pues, la norma general es que, si la actuación del TPI no está desprovista de una base razonable y no perjudica los derechos sustanciales de las partes, debe prevalecer su criterio dado que

es a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior,* *supra,* pág. 572.

### B. Parte Indispensable

Como parte del debido proceso de ley, es requerido acumular a todas las partes que tengan un interés común en un pleito. Esto responde a dos principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo. *Pérez Ríos et al. v CPE,* 213 DPR 203, 212 (2023); *RPR & BJJ Ex Parte,* 207 DPR 389, 407 (2021); *Cepeda Torres v. García Ortiz,* 132 DPR 698, 704 (1993).

La Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que las personas que tengan un interés común sin cuya presencia no puede adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Por tanto, si está ausente una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia y procede la desestimación del pelito. *Bonilla Ramos v. Dávila Medina,* 185 DPR 667, 677 (2012).

El interés común al que se hace referencia la precitada regla no es cualquier interés en el pleito, sino que éste tiene que ser de tal orden que impida la confección de un derecho sin afectar los derechos de las personas que tengan un interés en el pleito y que están ausentes. *López García v. López García,* 200 DPR 50, 63-64 (2018). Además, el interés afectado tiene que ser real e inmediato, al extremo de impedir que se emita un decreto adecuado, ya que según la Regla 16.1, *supra,* una parte indispensable es aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados si se dicta una sentencia y la persona está ausente del litigio. Íd.

En lo pertinente, se ha reconocido que una asociación tiene legitimación activa y puede acudir al foro judicial a nombre de sus miembros

para vindicar los derechos de la entidad. *Fund. Surfrider y otros v. A.R.Pe*, 178 DPR 563 (2010).

### C. Doble Inmatriculación

En nuestro ordenamiento jurídico inmobiliario se reconoce el principio de fe pública registral. *Medina y otros v. Medina Garay*, 170 DPR 135, 142 (2007). Este fundamento, está sustentado en la idea de que el contenido del Registro de la Propiedad se considera exacto a los fines de la seguridad en el tráfico jurídico. Por ende, se debe tratar de evitar a toda costa la doble inmatriculación. Íd., pág. 143; *Cruz Fontánez v. Registrador*, 126 DPR 182, 186 (1990).

La Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, 30 LPRA sec. 6001 *et seq.*, mejor conocida como la *Ley del Registro de la Propiedad Inmobiliaria*, contiene lo atinente a la doble inmatriculación en el Registro de la Propiedad. Según nuestro Tribunal Supremo, la doble inmatriculación es el fenómeno en que una misma finca se encuentra inmatriculada en dos (2) folios independientes uno del otro". *Ramos v. Moure et al.*, 150 DPR 685, 693 (2000). Al respecto, el Artículo 199 de la Ley Núm. 210-2015, 30 LPRA sec. 6321, dispone que en los casos que el Registrador tenga motivo fundado para entender que la finca a inmatricularse aparece inscrita en el Registro de la Propiedad o forma parte de otra finca ya inscrita, exigirá una determinación judicial a los efectos de que se trata de finca distinta, con citación de los que aparecen con derecho en dicho Registro.

La misma Ley dispone el procedimiento a seguir en casos de doble inmatriculación. Art. 200 de la Ley Núm. 210-2015, 30 LPRA sec. 6322. En lo aquí pertinente, el procedimiento mediante el foro judicial se da cuando los interesados no se ponen de acuerdo y se refiera a distintos titulares. Íd. De modo que, se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble. Íd. Ante ello, el Tribunal ordenará la cancelación de la inscripción correspondiente. Íd.

No debe albergar dudas que, el problema de la doble inmatriculación es grave porque quebranta la fe pública registral y las presunciones que de él se derivan. *Medina y otros v. Medina Garay*, *supra,* págs. 143-144 (citando a: I. De Casso Romero, *Derecho hipotecario o del Registro de la Propiedad*, 4ta ed. rev., Madrid, Inst. de Derecho Civil, 1951, págs. 366–367.); *Ramos v. Moure et al.*, *supra,* pág. 693. Recordemos que, el derecho inmobiliario registral está predicado en la certeza y corrección de sus inscripciones. Véase, Ley Núm. 210-2015, 30 LPRA sec. 6001 *et seq.* (Expo. mts.); *Medina y otros v. Medina Garay, supra,* pág. 143.

Así pues, la respuesta jurisprudencial ante la problemática de la doble inmatriculación ha sido negarles a los adquirentes de la finca en cuestión la protección del tercer registral, debiéndose adjudicar las controversias planteadas de acuerdo con las reglas del Derecho Civil. *Medina y otros v. Medina Garay*, *supra*, pág. 144; *Pérez Cruz v. Fernández*, 101 DPR 365, 371–372 esc. 6 (1973); *Alameda Tower Associates v. Muñoz Román*, 129 DPR 698, 707 (1992). La necesidad de acudir a las normativas de nuestro derecho civil para resolver la pugna entre las inscripciones y determinar cuál es la que debe prevalecer, se debe a la contradicción e incompatibilidad de asientos de igual rango entre sí.

### III.

El apelante alega que erró el TPI al decretarse sin jurisdicción por falta de parte indispensable. Igualmente, aduce que dicho foro incidió al incumplir con el mandato del Tribunal de Apelaciones al no determinar la titularidad de la franja de terreno. Por último, este sostiene que erró el foro primario al mantener la doble inmatriculación del predio en controversia, pese a que este determinó que los apelados habían inducido a error al Tribunal al presentar información incompleta para obtener el Expediente de Dominio del caso JJV20008-0099.

En primer lugar, es conveniente mencionar que el expediente presentado por el apelante se encuentra incompleto. A juicio del señor Rivera Aponte, este incluyó la documentación necesaria para ponernos en posición para resolver los señalamientos de error contenidos en su recurso de *Apelación.* No obstante, no surge del expediente todo el procedimiento realizado por el TPI que le garantizó el debido proceso de ley. De los hechos que fueron citados por el mismo TPI en la *Sentencia* apelada, pero que fueron omitidos por el apelante en el recurso de *Apelación,* se desprende que dicho foro contó con el Informe de un Comisionado Especial.  En específico, el foro primario explicó lo siguiente:

> El 1 de agosto de 2014, notificado el 8 de agosto de 2014, el Tribunal ordenó a las partes en el término de veinte (20) días presentar sus objeciones fundamentadas al Informe del Comisionado Especial. El término antes mencionados extendió para que empiece contar desde el 12 de agosto de 2014.
>
> El 14 de agosto de 2014 la parte demandante presentó Moción aceptando informe del perito o Comisionado. Por su parte, el 2 de septiembre de 2014 la parte demandada presentó Moción Objetando Informe del Comisionado Especial. En el mismo solicitó una prórroga de quince (15) días para someter las objeciones por escrito. El 16 de septiembre de 2014 la parte demandada presentó Objeciones al Informe del Comisionado Especial Benigno Rodríguez Burgos. Se señaló vista para el 13 de enero de 2015 para discutir las objeciones al Informe del Comisionado Especial.
>
> El 22 de enero de 2015 se notificó la Minuta Resolución relacionada con vista del 13 de enero de 2015, transcrita el 19 de enero de 2015. **En la misma se expuso que la vista del 13 de enero de 2015 se señaló con el propósito de atender unas objeciones al Informe del Comisionado Especial que fuera levantadas por la parte demandada. En dicha vista la representación legal de la parte demandada en ese momento examinó bajo juramento al Agrimensor Benigno Rodríguez, particularmente en torno a la Escritura 4 del 24 de mayo de 1987, la Escritura 7 del 25 de abril de 1989, Escritura 69 y el caso 72-237 1. Examinado por el Tribunal el Comisionado Especial Agrimensor Benigno Rodríguez, indicó que la postura esbozada en su Informe no cambiaría a la luz de las preguntas que le fueran realizadas por la representación legal de la parte demandada.** El Tribunal dispuso que no se acreditó que las conclusiones del Comisionado sean claramente erróneas, según el criterio que contempla la Regla 41 de las de Procedimiento Civil. Finalmente, el Tribunal emite Resolución adoptando el Informe del Comisionado Especial. (Énfasis nuestro).[6]

---

[6] Apéndice I del *Recurso de Apelación,* pág. 4.

De lo anterior, no hay duda de que el foro primario le garantizó el debido proceso de ley, brindándole a ambas partes la oportunidad de impugnar la prueba presentada por el Comisionado Especial. Incluso, mediante una vista, estos tuvieron la oportunidad de cuestionar bajo juramento al agrimensor Benigno Rodríguez Burgos, quien fue el que preparó el Informe en cuestión. Igualmente, las partes tuvieron la oportunidad de presentar sus argumentos y prueba a su favor. No obstante, el TPI le dio entera credibilidad al Informe del Comisionado Especial, lo cual merece nuestra deferencia y, en consecuencia, deber prevalecer su criterio. Por lo tanto, resolvemos que no incidió el TPI al darle entera credibilidad al Informe del Comisionado Especial y sustentar su decisión en este, toda vez las partes tuvieron oportunidad de impugnarlo durante el proceso judicial.

Por otra parte, según vimos, luego de quince (15) años de litigio, el foro primario determinó que no hay jurisdicción por falta de indispensable. Esto, ya que el Informe del Comisionado Especial, preparado por un agrimensor licenciado el 31 de julio de 2014, arrojó que la titularidad de la franja de terreno en cuestión no le pertenece a ningunas de las partes en el pleito. En específico, el Comisionado Especial afirmó lo siguiente:

II. DATOS QUE CONSTAN EN DOCUMENTOS PÚBLICOS

.    .    .    .    .    .    .    .

**Posteriormente y mediante la Escritura Número 154 sobre Compraventa e Hipoteca Don Nemesio Rodríguez vende a Don Carlos Roberto Oquendo Martínez la finca agrupada con cabida de 2.10 cuerdas; que incluye los cuatro (4) predios y la franja de forma triangular.**

D. Escritura Número 69. . .

La cabida que se indica en la Escritura (3.43059) es la que consta inscrita, toda vez que la parcela segregada con cabida de 0.3280 cuerdas no había logrado acceso registral; pero ya había sido vendida a Nemesio Rodríguez y actualmente la posee Carlos Roberto Oquendo Martínez, por lo que podemos inferir que don Julio Rivera Aponte adquirió la finca 39070 con cabida real 3.1026 cuerdas.

Dicha finca tiene su génesis en el año 1954 conforme a la Escritura Número 26 del 10 de julio de 1954 y su posesión fue

transferida a Don Julio Rivera Aponte en virtud de la Escritura Número 69 antes mencionada por vía de los anteriores titulares.

De la Escritura Número 7 sobre Acta Aclaratoria anteriormente mencionada, se desprende que Don Manuel Ángel Figueroa sólo adquirió el Predio E con cabida de 3.1026; el cual posteriormente vendió a Don Julio Rivera Aponte.
…

III. DATOS DEL PLANO DE SEGREGACIÓN DE SOLARES CERTIFICADO POR EL INGENIERO ALFONSO ANGLERO GONZÁLEZ, LICENCIA NÚMERO 3595 FECHADO EL 04 DE NOVIEMBRE DE 1971

…

Conforme al plano de la colindancia Sur de los solares segregados; así como la del remanente de la finca constituye un camino público. Por el contrario, los predios que colindan al Oeste de la finca que pertenecen actualmente al Ingeniero Carlos Roberto Oquendo no contienen en su descripción ni se hace mención del camino, según se desprende de la Escritura Número 4. Aparentemente dicho camino se prolongó para proveer acceso a los predios colindantes. (Énfasis nuestro).[7]

De lo anterior se despende que la *Sentencia* apelada no está desprovista de méritos, ya que el foro primario fundamentó su decisión con el Informe del Comisionado Especial, que nos indica que el titular de la franja de terreno no le pertenece a ninguna de las partes en el pleito. Esto, ya que surge del antes citado Informe, que el titular de la franja de terreno aquí en disputa es el Ingeniero Carlos Roberto Oquendo, quien no es parte en el pleito y pudiera tener un interés fundamental propietario. Por lo tanto, el TPI correctamente desestimó la demanda del epígrafe por falta de parte indispensable, toda vez que el presunto titular de la franja de terreno no es parte en el caso de autos.

Ahora bien, es sabido que la doble inmatriculación es grave porque quebranta la fe pública registral, así como la certeza y corrección de las inscripciones en el Registro de la Propiedad. Según vimos, ambos expedientes de dominio se crearon con información falsa y así lo reconoció el foro primario, así como las partes en el pleito. Surge de las determinaciones de hecho del TPI, que en el caso JJV2008-0099 los apelados, Manuel Figueroa Rivera y

---

[7] Apéndice VII del *Recurso de Apelación,* págs. 67-68.

Sonia Esther Torres Vargas, le representaron al Tribunal ser los dueños de los predios de 1.0 y 0.50 cuerda respectivamente que fueran adquiridos mediante Escritura #4 sobre Compraventa con conocimiento de que la información provista era falsa y obviando el contenido del Acta Aclaratoria. Igualmente, en el caso JJV2009-0673, el apelante se basó en información falsa, que incluyó, entre otras cosas, la utilización de una escritura nula y una representación incorrecta de la cabida de la finca. Esta situación generará conflictos de titularidad y lacerará nuestra fe pública registral, por lo que debe ser corregida.

Siendo ello así, modificamos la *Sentencia* apelada a los efectos de que **se declare expresamente la nulidad las resoluciones de Expediente de Dominio JJV2008-0099 y JJV2009-0673**.[8] A su vez, se ordena la cancelación de los siguientes asientos registrales: **cancelación del asiento correspondiente de la finca 39,070; cancelación del asiento correspondiente de la finca 64,263. En su consecuencia, se devuelve el caso al foro primario para que emita las órdenes y mandamientos correspondientes al Registro de la Propiedad de Ponce, Sección 1, para la cancelación de los asientos producto de los expedientes de dominio.**

**IV.**

Por los fundamentos expuestos, modificamos la *Sentencia* apelada y, así modificada, la confirmamos.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] Apéndice XI y XII del *Recurso de Apelación,* págs. 83-87.